IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 3:08-cr-00057 |
| | ) | |
| ANGELO LAVELL SCOTT, | ) | **GOVERNMENT BRIEF** |
| | ) | **ON APPLICATION OF** |
| Defendant. | ) | **FIRST STEP ACT** |
| | ) | |

The United States of America, by and through its undersigned counsel, respectfully submits the following Government Brief on Application of the First Step Act in relation to Defendant's judgment and sentence:

## TABLE OF CONTENTS

**Summary**………………………………………………………….. 2

**Facts**…………………………………………………………….. 2

**The First Step Act**……………………………………………………….4

**Under the plain language of the First Step Act defendant is not eligible for relief**……………………………………………………….5

**Defendant is not entitled to a full plenary resentencing hearing**……………….12

**In the exercise of discretion, the district court should order a sentence of 262 months' imprisonment**……………………………………………..15

1

## Summary

Based on the trial record, the jury finding that his conspiracy offense involved 50 grams or more of crack cocaine, and the Presentence Investigation Report attributing 426.53 grams of cocaine base, Scott's offense remains well above the amended 280 gram threshold. Under the offense controls theory, he is not eligible for relief. The government notes the Eighth Circuit decision in *McDonald*, but argues this decision is distinguishable procedurally and on the facts. If the district court finds Scott is eligible for relief from his mandatory life sentence, then he is not entitled to a full plenary resentencing. Under the current Guidelines, Scott's advisory range would change to Level 34/Criminal History IV = 262 to 327 months' imprisonment. As a result, if he is eligible, then the district court should exercise discretion, deny any further hearing or reduction, and sentence Scott to 262 months' imprisonment.

## Facts

On June 10, 2008, a one-count indictment was filed charging Angel Lavell Scott, aka LO, with conspiracy to distribute at least 50 grams of a mixture and substance containing cocaine base, in violation of Title 21, United States Code, Sections 841(b)(1)(A), and 846. (DCD 2.) [1] On July 17, 2008, the government filed an Information and Notice of Prior Conviction under 21 U.S.C. § 851 based on two prior felony drug convictions, potentially enhancing the mandatory minimum statutory penalties. (DCD 15.) On February 4, 2009, a jury found Scott guilty of Count One and that the conspiracy involved 50 grams or more of crack cocaine. (DCD 95.)

---

[1] This brief uses the following abbreviations:
"DCD" -- district court clerk's record, followed by docket entry and page number, where noted;
"PSR" -- presentence report, followed by the page number of the originating document and paragraph number, where noted; and,
"ST" -- sentencing transcript, followed by page number.

The Final Presentence Investigation Report (PSR) attributed 426.53 grams of cocaine base to Scott. (PSR ¶ 26.) His United States Sentencing Guideline (USSG) range was calculated as follows:

| | |
|---|---|
| USSG §2D1.1 (base offense level 150-500 grams crack): | 32 |
| USSG §3B1.1(a) (role enhancement) | +4 |
| Adjusted Offense Level: | 36 |
| Total Offense Level: | 36 |

(PSR ¶¶ 31-39.) Scott's USSG advisory range was Level 36/Criminal History VI = 324 to 405 months imprisonment. (PSR ¶ 82.) However, based on the two prior convictions for felony drug offenses, on Count One, Scott was subject to a statutory mandatory minimum sentence of life imprisonment. (PSR ¶ 83.)

On June 25, 2009, the district court ordered a mandatory life sentence on Count One. (DCD 131.) Because the sentence was driven by the statutory mandatory minimum in this case, the district court found the Guideline issues and drug quantity were moot. (ST 48-49.) Scott appealed his sentence, challenging the constitutionality of the search of the apartment, the decision to prosecute him in federal court, and the constitutionally of his life sentence based on his two prior drug convictions occurring prior to the age of eighteen. The appellate court affirmed the district court on all three issues. *United States v. Scott*, 610 F.3d 1009 (8th Cir. 2010).

If the district court determines Scott is eligible for relief, then his advisory range under the current Guidelines would be:

| | |
|---|---|
| USSG §2D1.1 (base offense level 280-840 grams crack): | 30 |
| USSG §3B1.1(a) (role enhancement) | +4 |
| Total Offense Level: | 34 |

As a result, his amended advisory range is Level 34/Criminal History IV = 262 to 327 months imprisonment.

## The First Step Act

On December 21, 2018, the President signed the First Step Act of 2018, which, in part, made certain provisions of the Fair Sentencing Act of 2010 (FSA) retroactive to defendants who received mandatory minimum sentences prior to August 3, 2010 (*First Step Act*, Pub. Law No. 115-291, December 21, 2018). Specifically, Section 404(b) states a court that imposes a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed. Section 404(c) describes some limitations on this retroactive application, stating that "[n]o court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."

Section 2 of the FSA amended the threshold drug quantities in 841(b)(1)(A) from 50 to 280 grams of cocaine base, and in 841(b)(1)(B) from 5 to 28 grams of cocaine base. Other than as allowed by the First Step Act, the FSA is not retroactive. *United States v. Neadeau*, 639 F.3d 453, 456 (8th Cir. 2011); *United States v. Brewer*, 624 F.3d 900, 909 n.7 (8th Cir. 2010).

The plain meaning of the First Step Act supports a limited application of the FSA. Under Section 404(a), a "covered offense" is a violation of a federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act that was committed prior to August 3, 2010. If a defendant committed a violation of a "covered offense," then the district court may impose a reduced sentence as if section 2 or 3 were in effect at the time the covered offense was committed. *See*, Section 404(b). The First Step Act expressly states an intent that only the amendments to the mandatory minimum thresholds for cocaine base in Sections 2 and 3 apply retroactively.

### Under the plain language of the First Step Act defendant is not eligible for relief

The express direction of the First Step Act is to review a defendant's sentence as if the FSA was in effect at the time of the initial sentencing. In response to criticism of the 100-to-1 crack to powder ratio reflected in the original statutory thresholds, Congress reduced this ratio to 18-to-1 to achieve uniformity and proportionality. *Dorsey v. United States*, 567 U.S. 260, 268 (2012). Ordinarily, the practice in federal sentencing is to apply new penalties to defendants not yet sentenced, but withhold that change from defendants already sentenced. *See*, *Dorsey*, 567 U.S. at 280. In *Dorsey*, the FSA was applied to include a narrow class of defendants whose offense conduct occurred prior to August 3, 2010, but who were sentenced after. *Dorsey*, 567 U.S. at 276-81. The First Step Act provides a further legislative exception to this practice, and applies the amended crack cocaine thresholds to defendants whose offense and sentencing occurred prior to August 3, 2010.

In interpreting eligibility under the First Step Act, other courts have primarily applied two alternative approaches. The statute of conviction approach and the offense controls approach. Under the statute of conviction approach, defendants have argued that within the definition of

"covered offense," the phrase "the statutory penalties for which were modified by . . ." refers only to "a Federal criminal statute." *United States v. Wirsing*, 943 F.3d 175, 180 (4th Cir. 2019). This approach relies on the rule of statutory interpretation that modifiers attach to the closest noun. *Id.* In *Wirsing*, the defendant was previously convicted under § 841(a)(1) and (b)(1)(B) of possession with the intent to distribute approximately 16 grams of cocaine base. *Id.* Because the prior indictment alleged 16 grams of cocaine base, and as amended by the FSA this same 16 grams would invoke penalties under § 841(b)(1)(C), under the statute of conviction approach the defendant was convicted of a "covered offense." *Id.* at 185-86. *See also*, *United States v. Jackson*, 94 F.3d 315, 320 (5th Cir. 2019) (finding whether an offense is "covered" depends on the *statute* under which the defendant was convicted); and *United States v. Beamus*, No. 19-5533, 943 F.3d 789, 792, 2019 WL 6207955, at *3 (6th Cir. Nov. 21, 2019) (observing that the defendant was eligible for relief because the FSA modified the statutory range for his offense); *United States v. Phillips*, No. 3:05-cr-00562 JEG (S.D. Iowa, January 31, 2020) (despite a plea agreement stipulation to 1.5 kilograms of crack cocaine, concluding that it is the statute of conviction, not the defendant's conduct, that determines eligibility); and *United States v. McGee*, NO. 3:07-cr-674 JAJ (S.D. Iowa, December 5, 2019) (finding that a jury finding of 50 grams or more of cocaine base triggered penalties under § 841(b)(1)(B)).

Under the alternative offense controls approach, the determination of eligibility places more focus on the phrase "violation of a Federal criminal statute" that a defendant "committed." Another canon of statutory interpretation advises that a statutory phrase must be interpreted as a whole, giving effect to each word and not interpreting the provision so as to make other provisions meaningless or superfluous. *United States v. 144,774 pounds of Blue King Crab*, 410 F.3d 1131, 1134 (9th Cir. 2005). The offense controls approach seeks to give effect to the entire phrase

"violation of a Federal criminal statute." *See*, *United States v. Means*, No. 19-10333, 2019 WL 4302941 at *2 (11th Cir. Sept. 11, 2019) (unpublished) (denying a First Step Act motion, because the triggering quantity, over 5 kilograms, far exceeded the 280 gram amended threshold quantity).

In *United States v. McDonald*, No. 19-1221, 2019 WL 6721187, at *2 (8th Cir. Dec. 11, 2019), the Eighth Circuit found that McDonald's statute of conviction determined his eligibility for relief. Determination of what is a "covered offense," required finding 1) it was a violation of a federal statute; 2) the statutory penalties for which were modified by section 2 or 3 of the FSA; and 3) it was committed before August 3, 2010. *Id*. The decision in *McDonald* concluded that the defendant's violation for distribution of two ounces — approximately 57 ounces — of cocaine base, which under the FSA amendments now qualified for § 841(b)(1)(B) penalties, was a "covered offense." *Id*.

Under the broad language in *McDonald*, then, it would appear that Scott's conspiracy charge is a covered offense. There are, however, several distinctions between Scott's case and *McDonald*. *McDonald* involved a single count of distribution of cocaine base which, initially, was subject to the penalty provisions under 21 U.S.C. § 841(b)(1)(A) because it involved more than 50 grams. *Id.* Specifically, as the panel observed, the offense involved a total drug quantity of approximately 57 grams of cocaine base. *Id.* Under either the statute of conviction approach or the offense controls approach, once the threshold was raised to 280 grams, McDonald's offense fell under § 841(b)(1)(B) (28-gram threshold).

Additionally, it is noted in *McDonald* the government conceded that the distribution count was a "covered offense." *Id.* Here, the government has not made such a concession and, furthermore, Scott's case involves a broader and different issue of whether a conspiracy charge is a "covered offense." Moreover, the Eighth Circuit's reliance on the 57 grams involved in

McDonald's offense, seems to support that the panel consulted the trial and/or sentencing record to confirm the amount in question.[2] The district court record here unquestionably shows that Scott was responsible for well over 280 grams of cocaine base.

The government argues that *McDonald* did not address determination of eligibility for a conspiracy and is distinguishable on the facts. Further, the decision on eligibility in *McDonald* relied on the actual drug quantity involved. This total drug quantity of 57 grams of cocaine base, even under the offense controls approach, would still fall under the amended 280 gram threshold. As a result, *McDonald* left open the issue of making a factual finding in a conspiracy case, when the trial and sentencing record supports a drug quantity greater than 280 grams.

For similar reasons, the government respectfully disagrees with the reasoning in *McGee*. This decision, decided days before *McDonald*, determined eligibility without consideration of the full amount of crack cocaine that resulted from the violation of the conspiracy count. If *McDonald* does allow for the district court to consider the actual drug quantity involved in a conspiracy violation, then the reliance in *McGee* on the drug quantity in the statue of conviction may be incorrect.

---

[2] A review of McDonald's direct appeal indicates that no specific findings were made by the jury, which returned a general verdict. *United States v. Nicholson,* 231 F.3d 445, 453 (8th Cir. 2000). The briefing from McDonald's original appeal indicates that the indictment alleged that the distribution involved approximately two ounces of cocaine base but, again, confirms that the jury did not make any specific findings as to quantity. *See McDonald*, Appellant's Brief, 2002 WL 32375297, at *5-6; *see also United States v. Miller,* No. 4:98-cr-91-002, Superseding Indictment filed 6/23/1998 (E.D. Ark., docket no. 392), p. 24, Count 39 (alleging that McDonald "knowingly and intentionally distributed approximately 2 ounces of cocaine base, more or less") and Verdict Form dated 2/3/1999 as to Maurice Jerome McDonald (E.D. Ark., docket no. 1129) (general verdict as to Count 39).

As a result, *McDonald* is distinguishable under these circumstances and the government requests that the district court find the applicable eligibility question be governed by the offense controls approach. By referring to a "violation" that was "committed" on a particular date, Section 404(a) includes in the eligibility inquiry the actual conduct involved in the defendant's violation, rather than limiting the offense solely to the minimum drug quantity alleged in the indictment at the time a defendant was convicted. In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 489 (1985), for instance, the Supreme Court held in the context of 18 U.S.C. § 1964(c) that the term "violation" "referred only to a failure to adhere to legal requirements," not a criminal conviction. The Court explained that when Congress wishes to refer to "prior convictions, rather than prior criminal activity," it used the term "conviction," not "violation." *Id.* at 489 n.7. And in *United States v. Hayes*, 555 U.S. 415 (2009), the Court held that a statute defining a prior conviction for a "misdemeanor crime of domestic violence" referred in part to the defendant's actual conduct, not the statutory elements of the crime, when it described the prior offense as one "*committed by* a current or former spouse, parent, or guardian." *Id.* at 420-21 (emphasis added) (quoting 18 U.S.C. § 921(a)(33)(A)); *cf. Nijhawan v. Holder*, 557 U.S. 29, 32 (2009) (holding that a statutory term describing a prior "offense" referred not to a generic crime but to the "particular circumstances in which an offender committed" that offense "on a particular occasion"). Based on the plain language of the Act, Congress authorized consideration of all the conduct involved in a subject offense.

In reviewing the breadth of the First Step Act, this Court should start with its plain language. *United States v. Talley*, 16 F.3d 972, 975 (8th Cir. 1994). To determine legislative intent, the statute must be read as a whole. *United States v. Jones*, 811 F.2d 444, 447 (8th Cir. 1987). Reading the plain language of the statute as a whole, courts should not disregard the actual quantity

of crack involved in a defendant's charged offense.

The Indictment returned in 2008, charged Scott with conspiracy to distribute at least 50 grams of a mixture or substance containing cocaine base, implicating penalties under § 841(b)(1)(A). The purpose of the FSA was not to eliminate admitted drug quantities because the government did not allege 280 grams in the indictment, in anticipation of an unprecedented Congressional amendment, ten years later.  Limiting the applicable drug quantity to the minimum threshold alleged in the prior indictment, rather than the actual quantity involved, provides a windfall compared to a defendant charged under the same facts after the FSA, and takes the statute of conviction approach too far. If, as is the case here, Scott was convicted at trial and this same evidence established that the conspiracy "violation" involved a quantity of crack that would have triggered the same penalty after enactment of the FSA, then that defendant's "violation of a Federal criminal statute" is not one for which the statutory penalties were modified by the FSA. Accordingly, Scott was not sentenced for a "covered offense," and is ineligible for a reduced sentence.

Denial of eligibility at this time, resting on the factual determinations made in the original record, would not violate the rulings in *Apprendi v. New Jersey,* 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), that any fact increasing either a statutory maximum or mandatory minimum penalty must be charged in an indictment and found by a jury or admitted by the defendant.[3] These cases do not apply here, because the First Step Act authorizes a court only to "reduce" a sentence, not increase it, and further makes clear that "[n]othing in this section shall

---

[3] In fact, *Alleyne* applied to very few, if any, defendants who might benefit from the First Step Act. Any defendant sentenced before August 3, 2010, and whose conviction became final before *Alleyne* was decided on June 17, 2013, was subject to the rule of *Harris v. United States*, 536 U.S. 545 (2002), that a jury need not find a quantity increasing a mandatory minimum sentence, a decision later overruled in *Alleyne.*

be construed to require a court to reduce any sentence pursuant to this section." Section 404(c).

It also bears emphasis that any reduction in sentence under the First Step Act must comport with Section 3582(c)(1)(B), which states, "[t]he court may not modify a term of imprisonment once it has been imposed except that . . . the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute . . . ." The First Step Act allows imposition of a reduced sentence as if the FSA "were in effect at the time the covered offense was committed." It does not "expressly" authorize the retroactive application of *Apprendi* and *Alleyne*. *Apprendi*[4] and *Alleyne*[5] do not apply retroactively to undermine an otherwise final judgment, and Congress did not expressly state otherwise here. It did not decree that only this small set of offenders sentenced before August 3, 2010—those who committed crack cocaine offenses for which the statutory sentencing ranges have changed—may receive consideration under *Apprendi* and *Alleyne*, while no one else may.[6]

Under the plain and ordinary language of the First Step Act, Scott's involvement in a violation of a conspiracy that involved over 280 grams of crack cocaine would subject him to the same statutory minimums before and after the FSA. As a result, he is not eligible for a relief under the First Step Act.

---

[4] *Apprendi* does not apply retroactively on collateral review. *United States v. Moss*, 252 F.3d 993, 997 1001 (8th Cir. 2001).

[5] *Alleyne* does not apply retroactively on collateral review. *Walker v. United States*, 810 F.3d 568, 575 (8th Cir. 2016).

[6] In contrast, where Congress authorizes *de novo* resentencing, it states that authority explicitly. *See, e.g.*, 18 U.S.C. § 3742(f) and (g) (resentencings on remand following direct appeal); 28 U.S.C. § 2255(b) (resentencings in habeas context).

**Defendant is not entitled to a full plenary resentencing hearing**

If the district determines that Scott is eligible for relief, then he is not entitled to a full plenary resentencing hearing. Scott argues that the First Step Act allows for a full resentencing. Any plenary resentencing is contrary to the plain language of the First Step Act, and the narrow exceptions for reducing a sentence under § 3582(c). *See*, *United States v. Koons*, 850 F.3d 973, 976 (8th Cir.), cert. granted, 138 S. Ct. 543, and aff'd, 138 S. Ct. 1783 (2018) (providing a rare exception to the finality of criminal judgments, § 3582(c)(2) allows a district court to reduce the sentence of "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission). Section 404(b) directs that a court impose a reduced sentence only "as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed," and nothing more. In statutory construction, the expression of one thing generally excludes another. *TRW Inc. v. Andrews*, 534 U.S. 19, 28-29 (2001). Reading the First Step Act and § 3582(c)(1)(B) together, with the limited legislative history, supports a conclusion that any modification of Scott's sentence is limited to application of the amended threshold crack cocaine quantities in section 2 of the FSA as if in effect at the time his offense was committed.

The language of § 3582 endorses the finality of sentences, and only allows subsequent reductions under very limited circumstances. The preamble of § 3582 begins "The court may not modify a term of imprisonment once it has been imposed," and lists an exception under (c)(1)(B) when "the court may modify an imposed term of imprisonment **to the extent otherwise expressly permitted by statute**." (emphasis added). Neither the First Step Act, nor § 3582 authorizes or expressly permits a district court to reduce a previously imposed sentence based on anything other than the application of the amended threshold crack cocaine quantities in section 2 of the FSA.

Application of this principle logically calls for reconsideration of the sentence based on the legal circumstances in effect at the time of the offense, with the only change being substitution of the new provision of the FSA for those portions of Section 841(b)(1) applied earlier.

When it comes to the principle of finality of sentences, there is no distinctive difference between the scope of § 3582(c)(1)(B) and § 3582(c)(2) that would support a broader re-sentencing. Any distinctive difference is primarily the application of USSG §1B1.10 to reductions under § 3582(c)(2). While this textual difference does exist, removal of §1B1.10 from consideration still leaves the plain language of § 3582(c)(1)(B) which does not contain any authorization for a full plenary resentencing. What these two subsections clearly do have in common is both are narrow exceptions to the rule of finality, which directs for both provisions that "[t]he court may not modify a term of imprisonment once it has been imposed."

The Federal Rules distinguish between a sentencing proceeding and reduction proceedings under § 3582(c). While Federal Rule of Criminal Procedure 43(a)(3) requires a defendant's presence for sentencing, Rule 43(b)(4), states a defendant need not be present for a proceeding that involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c). Notably, Rule 43(b) would apply to both reductions under § 3582(c)(1)(B) and (c)(2) and is consistent with a sentencing reduction without a full hearing with defendant present.

In *Dillon*, the Supreme Court confirmed that sentencing reduction proceedings stand "as a narrow exception to the rule of finality." *Dillon v. United States*, 560 U.S. 817, 827-28 (2010). The Supreme Court held that a reduction of sentence under 18 U.S.C. § 3582(c)(2), based on a guideline amendment declared retroactive by the Sentencing Commission, does not involve a plenary resentencing, nor permit the application of *Booker* to otherwise final sentences, but instead allows only application of the new guideline range as dictated by the Commission. *Id*. The Court

concluded, "Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Id.* at 826.

The Eighth Circuit recently held that because the First Step Act gives district courts discretion to reduce a sentence and does not mention a hearing, the district court is not required to hold a hearing. *Williams*, 943 F.3d at 844. The decision in *Williams* found that neither the use of the term, "impose" nor "a complete review of the motion on the merits," necessitated a hearing. *Id. See also*, *United States v. Hegwood*, 934 F.3d 414, 417-18 (5th Cir. 2019); and *United States v. Carter*, No. 19-10918, 2019 WL 5295132, at *3-4 (11th Cir. Oct. 18, 2019) (unpublished). The ordinary and plain meaning of the First Step Act does not require a full resentencing.

The Fifth and Eleventh Circuits, and multiple district courts, have similarly held that First Step Act does not authorize a plenary resentencing, and the only permissible reductions are those that result from the application of sections 2 and 3 of the FSA. *United States v. Hegwood*, 934 F.3d 414, 417-18 (5th Cir. 2019); *United States v. Carter*, No. 19-10918, 2019 WL 5295132, at *3-4 (11th Cir. Oct. 18, 2019); *see also*, *United States v. Drake*, No. 1:07CR53-1, 2019 WL 5213923, at *5 (N.D.W. Va. Oct. 16, 2019) (concluding that Section 404, by its own terms, does not authorize courts to reduce sentences based on subsequent changes in the law other than the retroactive application of sections 2 and 3 of the Fair Sentencing Act); *United States v. Perkins*, No. CR06-0114-LRR, 2019 WL 1578367 at *3 (N.D. Iowa Apr. 3, 2019) (agreeing a full resentencing is not required or called for); *United States v. Haynes*, No. 8:08CR441, 2019 WL 1430125 at *2 (D. Neb. Mar. 29, 2019) (no plenary resentencing required); and *United States v. Russo*, No. 8:03CR413, 2019 WL 1277507, at *1-2 (D. Neb. Mar. 20, 2019) (finding no plenary resentencing, and no authority to consider intervening changes in the law). In statutory

14

construction, the expression of one thing generally excludes another. *TRW Inc. v. Andrews*, 534 U.S. 19, 28-29 (2001). This express direction to what to consider when reducing a sentence, supports the conclusion that Congress provided limited authority to reduce based only the FSA amendments, and did not intend to apply other changes in the law not in effect at the time of the original sentencing. *United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir. 2019).

The government agrees that in determining whether to reduce the sentence of a qualifying defendant under the Act, a court should consider the sentencing factors set forth in Section 3553(a). In addition, under *Pepper v. United States*, 562 U.S. 476 (2011), a court may consider post-offense conduct, either positive or negative, in assessing whether to adjust a previously imposed sentence. *See Williams*, 943 F.3d at 844. However, the district court need not adjust a sentence based on good conduct in prison or post-offense rehabilitation. *United States v. Tollefson*, 853 F.3d 481, 486 (8th Cir. 2017); *United States v. Hernandez-Marfil*, 825 F.3d 410, 412 (8th Cir. 2016). The district court is only "free to fashion" a different sentence as authorized by the First Step Act. Any request for a plenary hearing or new arguments should be denied.

### In the exercise of discretion, the district court should order a sentence of 262 months' imprisonment.

If the district court finds Scott eligible for relief from his mandatory life sentence, the seriousness of the offense, involving a significant quantity of crack cocaine, and the history and characteristics of Scott, including two prior enhancing convictions for felony drug offenses and an upward adjustment for role in the offense, support the district court's exercise of discretion to reduce the sentence to 262 months' imprisonment. Scott argues for a downward variance based on his good conduct in prison, the fact he was only a street level drug dealer, and a disparity in comparison to other federal defendants.

Scott was far from a street level drug dealer. Between August 2006 and January 2007, Scott organized a drug enterprise, in which he and two other individuals traveled to Chicago, Illinois, for the purpose of drug trafficking crack cocaine back to Iowa City, Iowa. (PSR ¶ 26.) As part of this enterprise, Scott provided cocaine to other individuals for use of their personal vehicles for drug transportation. *Id*. Scott was assessed a four level role enhancement as an organizer and leader, based, in part, on directing multiple individuals to distribute crack cocaine on his behalf. *Id*. Scott used another person's apartment solely as his distribution center and provided crack as payment. *Id*. Additionally, Scott forced one of the co-conspirators' girlfriend to distribute on his behalf and when she refused, Scott threatened and physically assaulted her. *Id*.

His criminal history included convictions for the following drug and violent offenses: 1997-Possession of a Controlled Substance; 1997-Receive, Possess, or Sell Stolen Vehicle; 1998-Possession of a Controlled Substance; 2000-Armed Robbery, Armed with Firearm; 2003-Domestic Battery; 2005-Assault; 2006-Assault; 2006-Possession of a Controlled Substance; and 2006-Possession of a Controlled Substance. (PSR ¶¶ 41-50.) Any positive and negatives of Scott's post-offense conduct in prison are outweighed by the § 3553(a) and Guideline factors listed above.

Scott argues that his sentence is disproportionate by comparing the raw numbers from sentences of two other federal defendants. Julius Sharkey's lower advisory guideline range was the result of his acceptance of responsibility, his eligibility for safety valve, and his significantly lower Criminal History Category I. (*United States v. Sharkey*, No. 3:07-cr-00634, DCD 59, 60.) Ardell Sanders' lower sentence was the result of a significant downward departure, and benefit from Amendment 782. (*United States v. Sanders*, No. 3:07-cr-00634, DCD 63, 64, 194, 224.) The sentencing factors of both Sharkey and Sanders are clearly distinguishable from Scott, and while relevant, a mere comparison of the numerical differences does not warrant any further reduction

for Scott.

In considering unwarranted sentencing disparities under § 3553(a)(6), any further reduction in Scott's sentence would provide him a windfall. If Scott were charged post-FSA, then the government would have alleged 280 grams or more of crack cocaine. A defendant charged today under the same facts, may be subject to a much higher sentence than that advocated by Scott. Therefore, to avoid unwarranted sentencing disparities, if Scott is eligible, then he should be sentenced within the amended Guideline range.

WHEREFORE, for the reasons stated above, the government prays that the district court find that Scott is not eligible for relief under the First Step Act, or if eligible, then exercise its discretion and impose a sentence of 262 months' prison.

Respectfully submitted,

Marc Krickbaum
United States Attorney

By:    */s/ Richard D. Westphal*
       Richard D. Westphal
       Assistant United States Attorney
       U.S. Courthouse Annex, Suite 286
       110 E. Court Avenue
       Des Moines, Iowa 50309-2053
       (515) 473-9300
       Rich.Westphal@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2020, I electronically filed the foregoing with the Clerk of Court using the CM ECF system.  I hereby certify that a copy of this document was served on the parties or attorneys of record by:

____U.S. Mail _____ Fax _____Hand Delivery

__x__ECF/Electronic filing __x__Other means

UNITED STATES ATTORNEY

By: */s/ Richard D. Westphal*
    Richard D. Westphal